### RICHARD E. RANKIN v. RAY T. HELMS, TRADING AS HELMS CONSTRUCTION COMPANY.

(Filed 10 October, 1956.)

**1. Frauds, Statute of, § 9—**

A contract for the construction of a house is not required to be in writing. G.S. 22-1, *et seq.*

**2. Contracts § 1: Evidence § 39—**

Where a contract is not required to be in writing it may be partly written and partly verbal, in which event the verbal part may be shown by parol, provided the parol evidence does not vary or contradict the written terms, but supplements the written part so as to establish one entire contract.

**3. Same—**

A written agreement to pay a contractor a stipulated fee to supervise the erection of a residence does not preclude parol evidence of a contemporaneous verbal agreement that the entire cost of the construction of the dwelling, including the builder's fee, should not exceed a stipulated sum, since the parol agreement supplements the written so that the written and parol agreements together constitute one entire contract.

**4. Contracts § 23—**

Plaintiff's evidence to the effect that defendant agreed to supervise the construction of a dwelling for a fee and stipulated that the entire cost of construction should not exceed a stated sum, that the house was not completed according to the plans and specifications, and that the cost of construction largely exceeded the contract price, *is held* sufficient to overrule defendant's motion for nonsuit in an action for damages for breach of contract.

**5. Damages § 11: Evidence § 46d—Witness may not give mere estimate or opinion as to amount of damages without proper predicate therefor.**

Plaintiff owner sought to recover of the defendant contractor damages for breach of contract for construction of a residence, upon the ground that the cost exceeded the contract price and on the ground that the house and garage had not been completed according to the contract and plans. Plaintiff offered no evidence as to the cost of completing the unfinished items, but was permitted to testify that defendant was indebted to him in a specified amount, which amount was in excess of the difference between the amount plaintiff had paid out, according to the evidence, and the contract price. *Held:* Plaintiff's statement as to the amount of damage was a mere guess or opinion, and the admission of such testimony on the precise point for the jury's determination, without any proper basis therefor, was prejudicial error.

**6. Trial § 23a—**

A jury verdict cannot be based upon a mere guess.

RANKIN v. HELMS.

RODMAN and DEVIN, JJ., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.

HIGGINS, J., dissenting.

APPEAL by defendant from *Froneberger, J.,* Regular December Civil Term 1955 of GASTON.

Civil action for damages for alleged breach of contract.

The plaintiff desired to build a ten-room house and garage. The defendant was in the construction business. Plaintiff alleges in substance in his complaint as follows: Plaintiff submitted plans and specifications for a house and garage to defendant, and told him, before he entered into a contract, that it was imperative that he should know the maximum cost of construction, in order to make necessary financial arrangements. Defendant said he hoped to be able to hold the cost to $40,000.00, but in no event would the cost, including his $4,500.00 fee for construction, exceed $46,500.00. On 11 January 1954 plaintiff engaged defendant to construct the buildings according to his plans, and agreed to pay him a fee of $4,500.00 for supervising the work. Up to 16 August 1954 plaintiff has paid defendant $37,859.25, at his request has paid $6,114.94 for materials and labor, and has furnished materials of the value of $862.80. Since 18 August 1954 defendant sent two subcontractors to plaintiff to demand payment of their accounts in the sum of $4,320.40, which, with the amounts stated above, total $49,-157.39. On the afternoon of 16 August 1954 defendant caused to be delivered to plaintiff another bill for $8,336.25. The work on the house is incomplete, and defendant has refused to finish the work until he is paid a further sum of $4,516.25. It will cost plaintiff $500.00 to complete his house. The defendant has breached his contract by failing to keep the total cost of construction below the sum of $46,500.00 in accordance with his undertaking, by failing to give adequate supervision to the construction, so that the time of laborers and sub-contractors has been wasted and considerable expense added to the cost of the house, and by failing to complete the house. The plaintiff alleges he has suffered loss and damage in the amount of $5,657.39.

This is a summation of defendant's amended answer—the original answer is not in the record—: Defendant admits that he reviewed plaintiff's plans, visited the site of the proposed buildings, and gave plaintiff an estimate that the cost of construction would be $46,125.00. The only contract between plaintiff and himself in respect to the construction of the buildings was in writing, and is as follows:

"Dr. R. E. Rankin                                    January 11, 1954
Mount Holly
North Carolina

I, T. R. Helms, trading as Helms Construction Company, do hereby agree to furnish such supervision as is necessary to build a residence for Dr. R. E. Rankin, Mount Holly, North Carolina, for the sum of four thousand five hundred dollars ($4,500.00).   I further agree to keep a fair and account (*sic*) of all labor and materials and such other expenses as are directly chargeable to this job and shall render an invoice of the same for payment.   All invoices shall be paid promptly in order to realize the saving and discounts extended by most suppliers of materials.

By:  (s)  T. R. HELMS
Date: Jan. 11—1953.   (*Sic*)

Accepted:
RICHARD E. RANKIN, M. D."

Defendant faithfully performed the terms and conditions of his written contract with the plaintiff, until plaintiff breached the contract on 18 August 1954, by failing to pay him for payrolls and materials which the defendant had paid for and on behalf of plaintiff in the amount of $3,016.25, and by failing to pay him the unpaid balance of $1,500.00 on his supervisory fee.   For these unpaid amounts totaling $4,516.25 defendant filed a counter-claim against plaintiff.

Plaintiff filed a reply alleging as follows:

"That the contract. as set out in paragraph 3 of the defendant's Further Answer and Defense and Counterclaim relates to the engagement of the defendant to supervise the building of the house; that the contract for the actual construction of the house was not reduced to writing but, as alleged in the plaintiff's complaint, related to revised plans to be drawn by the defendant's architects; which plans were prepared by January 28, 1954.   This agreement provided for the house as shown in the revised plans to be built at a total price not exceeding $46,500, including the defendant's supervisory fee.   The plaintiff has already paid out to the defendant, or to others at the defendant's request, a sum in excess of $46,500; that there has been no alteration in the plans or specifications which would justify this excess over the original construction price, or any excess over the original price, and the plaintiff therefore owes the defendant nothing."

The following issues were submitted to the jury without objection by the parties, and answered as appears:

"1. Did the plaintiff and defendant enter into an oral contract, as alleged in the plaintiff's complaint?
    Answer—Yes.
"2. Did the defendant breach said contract, as alleged in the plaintiff's complaint?
    Answer—Yes.
"3. In what amount, if any, is the plaintiff entitled to recover by way of damages against the defendant?
    Answer—$5,657.39.
"4. Did the plaintiff and the defendant enter into a written contract, as alleged in the defendant's answer and counterclaim?
    Answer—No.
"5. Did the plaintiff breach said written contract, as alleged in the defendant's answer and counterclaim?
    Answer.................
"6. What amount, if any, is the defendant entitled to recover of the plaintiff for the breach of said contract?
    Answer:................."

Judgment was entered in accord with the verdict, and defendant appeals.

*R. G. Cherry and Frank Battley Rankin for Plaintiff, Appellee.*
*Basil L. Whitener and Warren C. Stack for Defendant, Appellant.*

PARKER, J.  Plaintiff offered evidence, which was admitted by the court over 31 objections and exceptions by the defendant based upon the ground that the evidence violated the parol evidence rule, to this effect: Plaintiff made a verbal contract with defendant that the maximum cost of the construction of the house would not exceed $46,500.00. They had an oral agreement, when the written contract was signed, that the maximum cost, including the supervisory fee of $4,500.00, was $46,500.00.  Defendant told plaintiff the written contract "was just a supervisory contract and asked me to sign it, and that this $4,500.00 was included in the total contract for which we agreed to."

On cross-examination plaintiff testified defendant "guaranteed me" my house would not go above $46,125.00.

J. Bart Hall, President of the Belmont Building & Loan Association, testified without objection, that plaintiff made an application for a loan when the house was more than half completed.  That after this conversation with plaintiff he discussed the loan with the defendant, who said "that the house was on a cost plus basis, and that he had given Dr. Rankin an upset bid of $46,500.00."

Was oral testimony that plaintiff and defendant made a verbal contract that the cost of construction of the house would not exceed $46,500.00 admitted in evidence in violation of the parol evidence rule?

When the parties have reduced their contract to writing, parol evidence is not admissible to vary, alter or contradict it. *McLawhon v. Briley*, 234 N.C. 394, 67 S.E. 2d 285. This rule is only applicable when the entire contract has been reduced to writing, for if merely a part has been written, and the other part has been left in parol, provided the contract is not required by law to be written, it is competent to establish the latter part by oral evidence, if it does not conflict with what has been written. *McLawhon v. Briley, supra; Insurance Co. v. Morehead*, 209 N.C. 174, 183 S.E. 606; *Evans v. Freeman*, 142 N.C. 61, 54 S.E. 847.

*Stacy, C. J.*, said for the Court in *Insurance Co. v. Morehead, supra:* "It is well nigh axiomatic that no verbal contract between the parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions. . . . On the other hand, there are a number of seeming exceptions, more apparent than real perhaps, as well established as the rule itself. These decisions are to the effect that the rule which prohibits the introduction of parol testimony to vary, modify, or contradict the terms of a written instrument, is not violated: . . . Sixth, by showing the whole of a contract, only a part of which is in writing, provided the contract is not one required by law to be in writing and the unwritten part does not conflict with the written."

A contract for the construction of a house for a man to live in is not required to be in writing. See G.S., Sections 22-1 through 22-4, Contracts Requiring Writing.

If a contract is not required by law to be in writing, the parties may contract in writing, or orally, or reduce some of the terms to writing, and leave the others in parol. *Neal v. Marrone*, 239 N.C. 73, 79 S.E. 2d 239. In such case "if a part be written and a part verbal, that which is written cannot ordinarily be aided or contradicted by parol evidence, but the oral terms, if not at variance with the writing, may be shown in evidence; and in such case they supplement the writing, the whole constituting one entire contract." *Fertilizer Co. v. Eason*, 194 N.C. 244, 139 S.E. 376.

The contract between plaintiff and defendant for the construction of a house and garage was not required to be in writing. Plaintiff's evidence tends to show that the written contract was only a part of the agreement: that defendant told him the written contract "was just a supervisory contract, and asked me to sign it, and that this $4,500.00 was included in the total contract," and that the total contract was that the maximum cost of construction should not exceed $46,500.00. Plain-

tiff's witness, J. Bart Hall, testified the defendant told him "that the house was on a cost plus basis, and that he had given Dr. Rankin an upset bid of $46,500.00." The oral agreement that the maximum cost of construction should not exceed $46,500.00, or as plaintiff testified on cross-examination defendant "guaranteed me" my house would not go above $46,125.00, is not in conflict with the written agreement that defendant should be paid a supervisory fee of $4,500.00, but supplements it, the whole constituting one entire contract. Plaintiff's evidence does not show a parol agreement and a written agreement, dealing with identical subject matter, which are totally inconsistent, so that the written agreement must stand. *Smithfield Mills, Inc., v. Stevens,* 204 N.C. 382, 168 S.E. 201. The evidence was competent, as his Honor ruled, for the parol evidence rule was not violated.

The defendant assigns as error the failure of the court to allow his motion for judgment of nonsuit made at the close of plaintiff's evidence, and renewed at the close of all the evidence. The plaintiff offered evidence tending to show that the defendant did not adequately supervise the building of his house, and as a result the house was not completed according to the plans and specifications and the cost of construction to plaintiff largely exceeded the contract price of $46,500.00. The court was correct in not nonsuiting the case.

Plaintiff testified that the house and garage were not completed according to the contract and plans, in that, among other things, the basement steps and back porch had not been completed, two closets have not been completed, a clothes chute to the basement and two cabinets to the library have not been completed, weather-stripping of the doors has not been started, the air-conditioning unit has never worked or cooled the house, the maid's room over the garage is incomplete. He did not testify as to what it would cost to complete these things, nor is there any evidence in the Record as to the cost. Plaintiff also testified that up to the time of the filing of his complaint he had paid out on the construction of the house, either direct or on the instructions of the defendant, $49,157.39. Plaintiff testified: "My only complaint is that it cost over $46,125.00 and my house has not been completed." Plaintiff was then asked by his counsel this question: "What amount, Doctor, do you claim that Mr. Helms is indebted to you?" Objection by the defendant, overruled by the court, and exception by the defendant. Plaintiff answered: "At the time this complaint was filed, $5,657.39." Defendant assigns the admission of this evidence as error. This in substance is all of plaintiff's evidence as to damages, except that he said there were some small overcharges or mistakes in defendant's account. The plaintiff alleged in his complaint "that by reason of the said unlawful and wilful acts and conduct of the defendant the plaintiff has suf-

fered loss and damage in the sum of $5,657.39," and he prayed judgment against the defendant in that amount.

The third issue submitted to the jury read: "In what amount, if any, is the plaintiff entitled to recover by way of damages against the defendant?" Defendant assigns as error this part of the charge of the court on the third issue in parenthesis: "Now, the plaintiff says, gentlemen of the jury, that you should answer that issue yes, (and that you should answer it at least in the sum of $5,657.39. The plaintiff says and contends, and has offered evidence tending to show, that the original price for the building was $46,500.00 and that it has extended actually in the neighborhood of $50,000.00, and that other costs have developed that he did not know of at the time; and that certain parts of the building were not complete; and that certain mistakes were made in the accounts; and that you should at least answer that issue in his favor in the sum of at least $5,657.39)." The jury answered the third issue $5,657.39.

It is manifest that plaintiff's answer to the question that he had been damaged in the amount of $5,657.39 up to the time of the filing of the complaint is, if not a mere guess, a statement of his mere opinion or conclusion as to the amount of damages he has suffered, where no proper basis for the receipt of such evidence had been shown. That such is the case is clearly shown by the court's charge quoted above.

This is said in *Food Co. v. Elliott,* 151 N.C. 393, 66 S.E. 451, 31 L.R.A. (N.S.) 910: "The record is extremely meager as to evidence of damage, the whole of it being as follows: 'Q. How much were you damaged, if any, by this transaction? A. I have been damaged right smart; I could not tell exactly. Q. Give an estimate. A. I have been damaged at least fifty dollars, I know.' It is manifest that this extract from the record contains no facts from which the jury can estimate the damage done to the defendant's business. The defendant so testifying cannot be permitted to assess his own damage. That is the exclusive province of the jury. He must state the particulars of his injury, so the court can see if they come within the recognized principles of the law and are allowable. Damages must be reasonably certain, both in their nature and in respect to the cause from which they proceed. 1 Sutherland, sec. 53. If the evidence of injury to defendant's business is so vague, indefinite and uncertain that it does not furnish a basis for the estimating of damages by the jury, then they cannot be recovered. *Hart v. R. R.,* 101 Ga., 188; *Fletcher v. Packing Co.,* 58 N. Y. Sup., 612; 1 Sutherland, sec. 53. The party injured cannot be permitted to simply 'guess at it.' The defendant does not state that any portion of his estimate of fifty dollars was injury to his business, nor does he testify that his business was injured at all."

In *Stevenson v. Ebervale Coal Co.*, 201 Pa. 112, 50 A. 818, 88 Am. St. Rep. 805, the Court said: "The question of depreciation of the value of the property was not properly before the jury; but even if it had been, the opinions of these witnesses were reckless guesses, based upon no facts, and ought not to have been allowed to go to the jury, who may have been improperly and unduly influenced by them."

*Goforth v. Smith,* (Supreme Court of Oklahoma) 244 P. 2d 304, was an action to recover damages for alleged breach of an oral contract for the rent of farm lands, for destruction of terraces placed on the land, and for breach of a grazing contract. As to the damages the plaintiff testified that, if defendant had harvested the wheat, it would have made 12 or 12½ bushels to the acre, and by reason of defendant's failure to harvest the wheat plaintiffs were damaged in the sum of $1,000; that, if the cotton had been planted, it would have made ¾ of a bale to a bale per acre, and that because of defendant's failure to plant the cotton, plaintiffs were damaged in the sum of $1,200; and because of the destruction of the terraces some permanent damage was done to the land, and they were damaged in that respect in the sum of. $500.00. All of this evidence was admitted over defendant's objection. The Court said:ˈ "This objection should have been sustained. This witness testified to no facts from which damages could have been computed. He merely gave his estimate without any facts upon which to base such estimate as to the amount in which plaintiffs were damaged in these respects. This is the only evidence offered by plaintiffs to prove damages. The trial court committed prejudicial and reversible error in admitting this testimony."

In 32 C.J.S., Evidence, sec. 447, it is written: "Under the rule excluding opinion evidence, see *supra,* sec. 438, a witness may not state his mere opinion or conclusion as to the amount or extent of damages sustained where no proper basis for the receipt of such evidence has been shown . . ." See also: 20 Am. Jur., Evidence, p. 759, where it is said: "But the plaintiff's own mere guess as to the amount of his damages, supported by no facts, is not admissible."

In McCormick's Handbook of the Law of Evidence, Hornbook Series, (1954), this is stated: "Undoubtedly, there is a kind of statement by the witness which amounts to little more than an expression of his belief as to how the case should be decided or as to the amount of damages which should be given or as to the credibility of certain testimony. Such extreme expressions as these all courts, it is believed, would exclude. There is no necessity for such evidence, and to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses."

Defendant's assignment of error to the admission of plaintiff's testimony to the effect that he had been damaged in the amount of $5,657.39

is well taken. On the third issue the precise point the jury had to pass on from the evidence was the amount of damages, if any, plaintiff was entitled to recover from the defendant. The court, over the defendant's objection, permitted the plaintiff to guess at the amount of damages, or to give an estimate of damages without any proper basis for such estimate, and the jury answered the issue in the exact amount of his guess or estimate. A jury verdict cannot be based upon a mere guess. *Transport Co. v. Ins. Co.*, 236 N.C. 534, 73 S.E. 2d 481; *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d 661. The admission of this incompetent evidence necessitates a

New trial.

RODMAN and DEVIN, JJ., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.

HIGGINS, J., dissenting: I agree that error was committed in the course of the trial. However, I am of the opinion that the evidence fails to show a contract of guaranty on the part of the defendant that the cost of building plaintiff's home would not exceed $46,500. To my mind the evidence in the light most favorable to the plaintiff shows nothing more than that the defendant, as architect, merely estimated the cost of the structure. The evidence shows too many changes in plans during the progress of the work, without any corresponding change in the cost estimate, to permit the inference the defendant had agreed to underwrite the cost estimate originally made.

The case goes back for a new trial. The Court's opinion will be the law of the case. For that reason I record my belief that defendant's assignment of error No. 14 should be sustained and judgment of nonsuit entered.