RAY HENDERSON v. J. L. FORREST AND SARAH FORREST; AND J. L. FORREST AND SARAH FORREST v. B. F. HAGOOD, RAY HENDERSON, AND HAGOOD REALTY COMPANY.

(Filed 18 October, 1922.)

1. **Actions—Consolidation—Courts.**

During the pendency in the same court of two causes of action that involve practically the same issues, the court may consolidate them if this can be done without confusion or prejudice to the right of any party to either action, and under the facts appearing in these cases, they were not improperly consolidated.

2. **Contracts, Written—Evidence—Parol Evidence.**

Where a contract is not required to be in writing by the statute of frauds, and is partly written and partly rests in parol, evidence of the unwritten part is permissible, if it does not contradict the written part, to establish the contract in its entirety.

**3. Same—Collateral Agreements—Principal and Agent.**

Where a real estate agency has taken an option on the plaintiff's lands, it may be shown by parol that as a part of the consideration for the option, the agency would pay off a certain note given by the plaintiff to another, before maturity, either by exercising this option themselves or making sales to another as the plaintiff's agent, the consideration being sufficient to support both the principal and collateral contract.

**4. Same—Statute of Frauds.**

Where the optionee in a written option to purchase lands has agreed by parol either to take the land within the time required, and pay off an obligation of the owner, or sell the same to another with the same result, the parol or collateral agreement does not come within the meaning of the statute of frauds, and is enforceable.

**5. Same.**

The two individual defendants composed the defendant realty company. The plaintiff entered into a written contract with the realty company, giving it an option to purchase his certain lands within a stated time, which it did not exercise, and there was evidence tending to show that the plaintiff had bought through the said realty company a tract of land it had for sale for another, that he had received the deed therefor and executed his note to the seller, secured by a deed in trust: *Held*, parol evidence was competent, in the plaintiff's behalf, tending to show, as against the realty company, that the realty company, at the time of the execution of the note, had warranted that it should be paid out of the proceeds of the sale of the plaintiff's land, upon which they had taken the option, the parol evidence not being within the meaning of the statute of frauds or contradicting or varying the terms of the written contract.

APPEAL by realty company from *Cranmer, J.*, at February Term, 1922, of CRAVEN.

On 17 December, 1920, Ray Henderson brought suit against J. L. Forrest and his wife Sarah to recover $6,500 due on a promissory note for this amount, executed to him 29 April, 1920, and on 25 January, 1921, he made Herman D. Forrest and Howard L. Forrest, sons of J. L. Forrest, defendants, and alleged that their father had conveyed to them certain real estate with intent to defraud the plaintiff, and that they had participated in the fraud. On 31 January, 1921, J. L. Forrest and his wife instituted suit against Ray Henderson, B. F. Hagood, and the Hagood Realty Company (a copartnership composed of Henderson and Hagood), and alleged in their complaint that H. W. Armstrong had given the realty company an option on a tract of land in No. 8 Township, and the realty company had contracted to sell it to Forrest at the price of $31,000; that Forrest owned a farm in No. 1 Township of the value of $20,000, and the defendants contracted to see that Forrest was paid $19,500 for his farm if he would purchase the Armstrong land, and that the price offered him should go in part payment for the Armstrong tract. Forrest alleged that Armstrong executed and, through the realty

company, delivered to him a deed for the tract in No. 8 Township on 8 May, 1920, and he executed notes and a deed of trust to secure the purchase price, and that the note in suit was executed to enable the realty company to make the first payment to Armstrong, and was not to be paid by Forrest, but by the realty company out of the sale of the Forrest land. Forrest alleged that these representations were made by the realty company through Henderson and Hagood, and that he and his wife were thereby induced to execute the note in question. Henderson alleged that the realty company had no connection with the purchase or sale of the Armstrong land, but the trade was made with Henderson alone; that Armstrong demanded a payment of $5,000 cash, and Forrest, not having the money, executed the note for $6,500 to pay this amount, and Henderson's profits for negotiating the sale, and instructed Henderson to have the note discounted at the bank; and that Armstrong accepted this payment and executed his deed to Forrest. In answer to the issues submitted, the jury found that the note in controversy was not to be paid out of the purchase price of the Forrest land; that Forrest and his wife were indebted to Henderson on said note in the sum of $6,000, that the deed from Forrest to his sons was made with intent to defeat Henderson's claim, and the grantees accepted the deed with notice of the fraud; that the realty company guaranteed to purchase or sell the Forrest land at the price of $19,500, and that Forrest was entitled to recover of the realty company the sum of $4,000.

Judgment; appeal by the realty company.

*Guion & Guion for appellee.*
*Moore & Dunn for appellant.*

ADAMS, J. All the issues, except the fifth and the sixth, were answered by the jury in favor of the appellants, and several of the exceptions relating to these two present the same question. For this reason the merits of the controversy do not require extended discussion.

The appellants first except to the order consolidating the cases on the ground that such consolidation resulted in confusion which was prejudicial to the appellants, and that the court had no authority to make the order. In *Hartman v. Spiers,* 87 N. C., 28, it is held that the consolidation of actions is not authorized where they are essentially unlike, and the parties in each are not the same; and, in *Wilder v. Greene,* 172 N. C., 94, it is said that the power to consolidate actions is one that is often required in order that different suits involving practically the same issues may be joined, where it can be done without serious prejudice, for the purpose of preventing confusion and a conflict in verdicts. We think the principles stated in the latter case are applicable here. It is

admitted that the realty company, at the time the note in controversy was executed, was a copartnership composed of Henderson and Hagood. In their complaint, Forrest and his wife allege that the note for $6,500 was executed for the purpose of enabling the realty company to make the first payment on the purchase price of the Armstrong land under the company's option; and in his complaint Henderson alleges that the note was executed to himself, and that the realty company had no connection with or interest in the negotiations for the purchase of the Armstrong tract. It therefore appears, according to the appellee's contentions, that the actions were pending in the same court, at the same time, between the same parties, and that they involved substantially the same subject-matter, and that service of process on the grantees named in the appellee's alleged fraudulent conveyance was ancillary to the main cause of action. The issues were framed to meet the contentions of all the parties, and the fact that several of them were answered against the appellee is not legal cause for holding that the consolidation was either unauthorized or improvident. *Sumner v. Staton,* 151 N. C., 203; *Morrison v. Baker,* 81 N. C., 76; *Glenn v. Bank,* 70 N. C., 192.

On the day the note was given, Forrest and his wife executed a written instrument giving the realty company an option to purchase the Vanceboro land on or before 15 December, 1920, upon paying the purchase price, namely, $19,000, of which $5,000 was to be paid in cash and the remainder in three years, the deferred payments to be secured by a mortgage on the land. This instrument, executed under seal by Forrest and his wife for a valuable consideration, contains the following stipulations: "It is understood and agreed that the said sale is to be made at the option of the said Hagood Realty Company or his heirs or assigns, to be exercised on or before 15 December, 1920. It is further understood and agreed that if the said Hagood Realty Company and his heirs and assigns shall not demand of me a deed herein provided for and tender payment as herein provided for on or before 15 December, 1920, then this agreement be null and void, and we are to be at liberty to dispose of the land to any other person as we may desire, as if this contract had never been made; but otherwise this contract is to remain in full force and effect." The realty company did not exercise its election to make the purchase. Before the contract and the note were executed, Forrest told the realty company that his purchase of the Armstrong land was dependent on a sale of the Vanceboro place; and he contended that as an inducement to his execution of the note and contract the realty company warranted or guaranteed a sale of the Vanceboro place before the payments were to be made to Armstrong. In support of this contention he testified that Hagood said in the presence of Henderson: "We will guarantee you a sale of your Vanceboro farm in time to pay this note

and to make Mr. Armstrong's next payment." This and other evidence of like character was excepted to on the ground that it contradicted the terms of the written contract. .

The evidence, we think, is not subject to this objection. We have no disposition to modify or disregard the settled rules—intended for the "protection of the provident" and not for the "relief of the negligent," which prohibit the admission of parol evidence to contradict, add to, or vary the terms of a written contract, even where a part of the contract is in writing and a part is in parol (*Moffitt v. Maness,* 102 N. C., 457); but we must adhere to the long line of decisions which hold that where the contract is not one which the law requires to be in writing, and a part of it is written and a part is not, evidence of the unwritten part, if it does not contradict the writing, is admissible for the purpose of establishing the contract in its entirety. *Twidy v. Sanderson,* 31 N. C., 5; *Manning v. Jones,* 44 N. C., 368; *Daughtry v. Boothe,* 49 N. C., 87; *Braswell v. Pope,* 82 N. C., 57; *Cumming v. Barber,* 99 N. C., 332; *Palmer v. Lowder,* 167 N. C., 333. It will be noted, then, that the two instant questions are whether it is necessary that the alleged promise, or contract of warranty (not a technical guaranty), should have been in writing, and if not, whether the evidence excepted to contradicted the written contract or option. Each must be answered in the negative. The promise or warranty alleged to have been made by the appellant is not within the statute of frauds and may be assimilated to a contract of brokerage, or to a collateral or ancillary contract made by an agent who has been appointed by parol to make sale of his principal's land, one consideration being sufficient to support both the principal and the collateral contract. *Abbott v. Hunt,* 129 N. C., 403; *Lamb v. Baxter,* 130 N. C., 67; *Smith v. Browne,* 132 N. C., 365; *Palmer v. Lowder, supra; Green v. Thornton,* 49 N. C., 230; *Partin v. Prince,* 159 N. C., 554. As to the alleged contradiction of the written contract, it will suffice to say that the terms of the option conferring upon the appellants the right to elect whether they would take title to themselves are neither varied nor contradicted by their promise to see that another should purchase if they did not, for their agreement to warrant a sale was entirely collateral to the principal contract, and an allegation of fraud or mistake as a basis for the rescission or correction of the option was not necessary.

The greater number of the exceptions relate directly or indirectly to the subjects we have discussed, and the others present no question that demands special consideration. We have given the entire record a careful examination, and find

No error.